UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Deandre Crawford, Plaintiff, v. Randy Pfister, et al., Defendants. | Case No. 19-cv-4654 Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff Deandre Crawford attempted suicide twice after allegedly hearing voices in his cell while incarcerated at Stateville Correctional Center. He sues Randy Pfister and Noel Acosta, two Stateville officials, under 42 U.S.C. § 1983, claiming that they displayed deliberate indifference to his risk of attempting suicide. Defendants have moved for summary judgment. [46]. For the reasons explained below, this Court grants Defendants' motion.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made,

1

the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND

Initially, Defendants raise certain evidentiary objections to Plaintiff's responses to Defendants' statement of facts. The Court grants Defendants' request to strike Plaintiff's denials of facts nos. 21, 22, 23, 24, 36, 37, 44, 45, and 57. [61] at 2. Plaintiff denies each of these facts but fails to support those denials with citations to admissible evidence, as he must under the Local Rules. *See* [55] ¶¶ 21–24, 36–37, 44–45, 57. Accordingly, this Court deems those facts admitted for summary judgment

purposes. *See Gnutek v. Ill. Gaming Bd.*, No. 17-CV-00808, 2022 WL 169654, at *12 (N.D. Ill. Jan. 19, 2022); *see also Patel v. Brennan*, No. 20-CV-2238, 2021 WL 5937769, at *2 (N.D. Ill. Dec. 16, 2021) ("The non-movant must come forward with evidence, not expressions of disagreement.").

Defendants also request that this Court strike Plaintiff's denials to Defendants' facts nos. 18, 41, 43, 47, 48, 49, 51, 52, 54, and 55. *See* [61] at 2. Defendants argue that Plaintiff's denials are improper because they controvert sworn deposition testimony. *Id.* But because this Court did not rely upon those facts in considering Defendants' motion for summary judgment, it need not decide whether Plaintiff's denials were proper.

With those evidentiary issues resolved, this Court summarizes the pertinent facts which it takes from Defendants' statement of facts [46], Plaintiff's statement of additional facts [55], and Defendants' response to Plaintiff's additional facts [62].

**I. Parties**

Plaintiff is an inmate in the custody of the Illinois Department of Corrections (IDOC) at Lawrence Correctional Center. [46] ¶ 1. At all relevant times, Plaintiff was incarcerated at Stateville Correctional Center. *Id.* ¶ 2.

Defendant Randy Pfister served as the Stateville warden during the relevant time. *Id.* ¶ 3. Defendant Noel Acosta served as the assistant warden at Stateville during the relevant time. *Id.* ¶ 4. Both Pfister and Acosta possessed the authority to direct inmates be moved to different cells. [55] ¶ 12; [62] ¶ 22.

3

## II. Plaintiff's Medical Condition

Prior to entering IDOC custody, a doctor diagnosed Plaintiff with borderline personality disorder and bipolar disorder; that diagnosis was confirmed after Plaintiff entered into IDOC custody. [46] ¶¶ 10–11. Plaintiff began receiving treatment for his mental health conditions upon coming into IDOC custody. *Id.* ¶ 12. In the winter and spring of 2017, Plaintiff was taking prescribed medications and going to therapy to treat his mental health conditions. *Id.* ¶ 13.

During the relevant time, Plaintiff lived in Bravo House with a cell mate. *Id.* ¶ 14. In February 2017, Plaintiff began hearing voices in his cell. *Id.* ¶ 15. Plaintiff spoke with Pfister about hearing voices in his cell but could not recall the exact date of this conversation. *Id.* ¶ 16. Plaintiff testified that Pfister said he would see what he could do about Plaintiff's request to move to different cell. *Id.* ¶ 17. Pfister, for his part, testified that he does not recall ever speaking with Plaintiff. [46-2] at 28–29.

## III. Crisis Watch

On February 28, 2017, Stateville placed Plaintiff on crisis watch after he attempted to hang himself in his cell; the crisis watch entailed visual and verbal checks every fifteen minutes. [46] ¶¶ 20–22. Plaintiff remained on crisis watch until March 4, 2017. [55] ¶ 7. Plaintiff spoke with Acosta during this crisis watch. *Id.* ¶ 8; [46] ¶ 25. Plaintiff approached Acosta for help because he believed Acosta was the warden and possessed authority over the whole facility. [46] ¶ 27. According to Plaintiff, Acosta told Plaintiff to "write placement" about moving to a different cell. [55] ¶ 10. Acosta does not recall having this conversation with Plaintiff. [62] ¶ 8.

After taking him off crisis watch, Stateville told Plaintiff he would be placed in his original cell. [46] ¶ 30. Plaintiff told officials he would rather die than return to the same cell, made a second noose, and used it on March 4, 2017 to hang himself a second time—this time in the mental health unit. [55] ¶ 16. After this second suicide attempt, Stateville again returned Plaintiff to crisis watch, where he remained until March 7, 2017. [46] ¶¶ 32, 35.

### IV. The Aftermath

Plaintiff saw a mental health professional each of the first five days after he was taken off the second crisis watch. *Id.* ¶ 38. Plaintiff remained stable for the first five days after his second crisis watch. *Id.* ¶ 39. A March 7, 2017 progress note (the day he came off crisis watch) reflects a nurse's observations that Plaintiff was experiencing no acute distress. [48] at 35. Another note from the same day states that Plaintiff reported being safe to go back to his cell house. *Id.* at 36.

Plaintiff submitted an emergency grievance on March 14, 2017. [55-3] at 2. Among other things, he states in that grievance that he hanged himself twice because he could no longer "deal with the voices" in his cell; that he experiences mental anguish from being in the same cell; and that he feels he "may snap and harm" himself or his cell mate "because of these voices." *Id.* at 2–3. The grievance form indicates that Stateville's chief administrative officer received the grievance on March 24, 2017 and wrote "MH & IA/Intel to immediately follow-up." *Id.* at 2. According to Defendant Pfister, "MH" refers to "Mental Health," and "IA" to "Internal Affairs and Intel." [46-3] at 21. Pfister's name appears on the signature line of the

grievance response form. [55-3] at 2. Pfister testified that someone signed the form for him "as a designee." [46-3] at 21, 23.

On March 17, 2017, after Plaintiff submitted his grievance but before Pfister (or his designee) responded, Plaintiff was moved to a new cell. [46] ¶ 59.

**V. Plaintiff's Claim**

Plaintiff brings a single claim under 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment. [15]. Defendants have moved for summary judgment. [45].

## ANALYSIS

Defendants' motion argues that the record entitles them to summary judgment because there is no evidence that they acted with subjective deliberate indifference to Plaintiff's risk of self-harm and that the doctrine of *respondeat superior* does not apply to Section 1983 claims. [47]. The first argument is dispositive of Plaintiff's claim, and thus, is the focus of this Court's ensuing analysis.

The Eighth Amendment requires prison officials to provide healthcare to incarcerated inmates who cannot obtain healthcare on their own, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021), and imposes liability on prison officials who act with deliberate indifference to a substantial risk of serious harm to inmates, *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). The deliberate indifference standard encompasses both objective and subjective elements: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were

6

deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan*, 987 F.3d at 693 (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)); *see also Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). The parties do not dispute that Plaintiff has satisfied the objective component, so their dispute centers on the subjective element, which requires Plaintiff to prove that Defendants acted "with a 'sufficiently culpable state of mind.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Plaintiff claims that the record creates a triable issue of fact as to whether Defendants were subjectively deliberately indifferent to the risk that Plaintiff would die by suicide, or at a minimum, harm himself in the attempt. [56] at 9. In the context of suicide risks, the subjective component of an Eighth Amendment claim requires Plaintiff to present evidence that would permit a trier of fact to conclude that Defendants: (1) subjectively knew he was at substantial risk of death by suicide; and (2) intentionally disregarded the risk. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 566 (7th Cir. 2021). On the first prong (knowledge), "defendant is not liable where [he] was 'not alerted to the likelihood' of the risk of death by suicide." *Id.* (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)). Mere knowledge that an inmate is behaving violently or "acting in a freaky manner" is insufficient to impute awareness of a substantial risk of suicide. *Est. of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (internal quotation marks omitted). On the second prong (intentional disregard), errors in judgment or mere negligence

7

will not suffice to overcome summary judgment. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Instead, this Court requires "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks," *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (alteration in original) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)), or something "akin to criminal recklessness," *Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019).

Viewing the record in Plaintiff's favor, the evidence remains insufficient to satisfy these standards.

### A. Acosta

Plaintiff testified that he spoke with Acosta while being held in the health care unit. [46-1] at 32. According to Plaintiff, he explained to Acosta that he has "a mental illness and that [he was] hearing voices in [his cell] and never heard voices before until I got to that particular cell." *Id.* at 34. Acosta told Plaintiff to "write placement," and the conversation ended. *Id.* at 35.

There is no evidence that Acosta was aware of Plaintiff's mental health issues prior to his February 28, 2017 suicide attempt. During his single, limited interaction with Acosta after his first suicide attempt, Plaintiff did not say that he would harm himself again. No rational jury could find that Plaintiff's complaints about his mental illness and "hearing voices," without further indication that he was about to harm himself if placed back in his cell, made Acosta "cognizant of the significant likelihood" that Plaintiff "may imminently seek to take his own life." *Collins*, 462 F.3d at 761 (holding that the plaintiff's requests to see crisis counselor, without giving a reason

8

for the requests, did not by itself put a defendant on notice that the plaintiff posed a substantial and imminent risk of suicide); *see also, e.g.*, *Wright v. Funk*, 853 F. App'x 22, 24 (7th Cir. 2021) (holding that a prisoner's statements that "he was having suicidal thoughts and would like to speak with someone from the psychological services unit" did not put officials on notice that the plaintiff "would imminently attempt to harm himself").

Plaintiff argues that Acosta had knowledge that he would harm himself if returned to his cell because he was already on crisis watch for attempting suicide after hearing voices in his cell. [56] at 5–6. This argument overstates the record. Plaintiff testified only that he told Acosta about his mental illness and about hearing voices in his cell. [46-1] at 34. There is no evidence that Acosta knew that Plaintiff attempted suicide *because* of these voices, nor any evidence that would make Acosta believe that Plaintiff might self-harm again if placed back in his cell. Moreover, the fact that Plaintiff was placed "on some level of suicide watch, even the highest level, does not demonstrate a subjective awareness of a substantial risk of imminent suicide." *Collignon v. Milwaukee County*, 163 F.3d 982, 990 (7th Cir. 1998). Crisis watch is a "preventative safety measure" that ensures the safety of an inmate from himself and from others. *Id.*; *see also Kupsky v. McLaren*, 748 F. App'x 74, 76 (7th Cir. 2019) (noting the purposes of observation include ensuring the safety of the inmate or the safety of others). Without further evidence indicating that Plaintiff was displaying suicidal behavior or threatening to harm himself again, the fact that

Plaintiff was on crisis watch, on its own, does not create a triable issue of fact as to Acosta's knowledge.

Because the record lacks evidence of Acosta's knowledge that Plaintiff would harm himself, this Court grants summary judgment in his favor.

### B. Pfister

As to Pfister, Plaintiff testified that they spoke at some unspecified time, and Plaintiff told Pfister about hearing voices in his cell. [46] ¶ 16. Like Plaintiff's conversation with Acosta about hearing voices, this encounter alone remains too vague to give rise to any inference that Pfister knew that Plaintiff was at a substantial risk of imminent self-harm.

Plaintiff also points to evidence of the March 14, 2017 emergency grievance he wrote, in which he detailed his two prior suicide attempts and warned that he might "snap and harm" himself or his cell mate due to the voices he hears inside his cell. [55-3] at 2–3. The contents of this grievance—in particular, Plaintiff's warning of further self-harm—certainly is sufficient to impute knowledge that Plaintiff was at substantial risk of self-harm. *See Sanville v. McCaughtry*, 266 F.3d 724, 737–38 (7th Cir. 2001) (noting that a plaintiff's announcement that he was suicidal might alone enough suffice to impute awareness of a substantial risk of suicide).

Pfister denies personal knowledge of the grievance: he maintains that, despite the fact that his own signature and a handwritten note appears in the response portion of the grievance form, one of his designees filled out the response and signed on his behalf. [46-3] at 21; *see* [55-3] at 2. Yet under Seventh Circuit precedent, the

10

fact that Pfister responded to and signed a grievance creates a triable issue of fact as to his knowledge. *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016). Plaintiff therefore has cleared the initial hurdle of raising a triable issue as to Pfister's knowledge of his substantial risk of self-harm.

But it is on the second hurdle where Plaintiff's proof falls short. Even if Pfister possessed subjective awareness of a substantial risk of suicide, there is no evidence that Pfister "intentionally disregarded" that risk. *Quinn*, 8 F.4th at 566 (quotation omitted). Viewing the record in Plaintiff's favor, the response to Plaintiff's grievance indicates that once Pfister received the grievance, he expedited it on an emergency basis and referred the issue to Stateville's Mental Health, Internal Affairs and Intel Units "to immediately follow-up." [55-3] at 2; [46-3] at 21.[1] Top-level administrators like Pfister are entitled to "relegate to prison staff . . . the primary responsibility for specific prison functions." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016). Accordingly, Pfister's immediate referral of Plaintiff's issues to the appropriate prison units precludes any inference that he intentionally disregarded Plaintiff's risk of self-harm. Based upon the totality of the evidence, a jury could not reasonably find Pfister deliberately indifferent to Plaintiff's substantial risk of self-harm. *See, e.g.*, *Thornton v. Godinez*, 720 F. App'x 762, 764 (7th Cir. 2017) (holding that a warden did not act with deliberate indifference when he classified a grievance as an emergency and

---

[1] The parties introduce no evidence as to what those mental health and internal affairs units did, if anything, in response to the order "to immediately follow-up." However, the Court notes Plaintiff was moved to a new cell more than a week earlier, on March 17, 2017, rendering Pfister's order moot. [46] ¶ 59.

11

directed a subordinate to investigate the plaintiff's concerns). This Court therefore also grants summary judgment in Pfister's favor.

## CONCLUSION

For the stated reasons, this Court grants Defendants' motion for summary judgment [45]. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff. Civil case terminated.

Dated: March 14, 2022

E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge